UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KATHERINE CHRISTOPHER,
    *Plaintiff*,

v.

CITY OF DERBY,
    *Defendant*.

Case No. 3:24cv1156 (MPS)

## RULING ON MOTION TO DISMISS

Katherine Christopher brings this § 1983 action against her employer, the City of Derby, alleging it reduced her salary in breach of an agreement she had with the former Mayor. The complaint alleges violation of the Contracts Clause of the United States Constitution (count 1), deprivation of procedural due process in violation of the Fourteenth Amendment (count 2), and breach of contract under state law (count 3). The defendant moves to dismiss all counts under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on the grounds that the agreement upon which the complaint is premised is unenforceable. ECF No. 18. For the reasons that follow, I grant the motion as to counts 1 and 2 and decline to exercise supplemental jurisdiction over count 3.

I.    **Factual Allegations**

The following facts, which I accept as true for purposes of this ruling, are derived from the complaint, ECF No. 1, the document attached as an exhibit to the complaint, and certain public documents the Court takes judicial notice of.

Christopher is a human resource professional with extensive experience working in the public sector. *Id.* ¶ 12. On August 11, 2022, the Board of Aldermen/Alderwomen for the City of

Derby ("Board") approved a description for the position of Human Resources Director.[1]  *Id.* ¶ 15.  Christopher has been employed by the City of Derby since August 29, 2022.  *Id.* ¶ 14.  Prior to Christopher's employment, the City of Derby had not employed the services of a human resource professional and did not have a human resources department.  *Id.* ¶ 13.

On December 19, 2022, the Board approved the "Human Resource Director's compensation at $49/hr for eight hours per week."  *Id.* ¶ 16.

On April 10, 2023, then-Mayor Dziekan extended a contract of employment to Christopher, which she accepted.  *Id.* ¶ 18.  *See id.* at 11-14 (letter).  The contract stated that the position of Human Resources Director is "full-time" and that Christopher would be "paid an annual salary of $89,180, less lawful deductions and withholdings."  *Id.* ¶¶ 20-21.  It also provided that Christopher's "employment with the City may be involuntarily terminated by the City only for Cause."  *Id.* ¶ 22.  Beginning April 10, 2023, Christopher was compensated for her services pursuant to the terms of the April 10, 2023 contract of employment.  *Id.* ¶ 23.

On March 14, 2024, the Board voted to set the "full-time annual salary for the position of Human Resources Director for the City of Derby at $70,000."[2]  ECF No. 18-2 at 10; ECF No. 1 ¶ 24.

Christopher remains employed by the City.  As relief in this action, she seeks, among other things, an order that the City "restore the salary set forth in the April 10, 2023 agreement retroactive

---

[1] The job description adopted is on the City's website under the August 11, 2022 meeting minutes.  See https://www.derbyct.gov/meetingdashboard  The Board's meeting minutes are publicly available documents.  "It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).  As such, the Court can take judicial notice of the Board's meeting minutes.  *See, e.g., Rynasko v. New York Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023) (stating that courts may take judicial notice of documents from official government websites); *Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs*, 488 F. Supp. 2d 22, 25–26 (D.N.H. 2007) (taking judicial notice of city zoning board's meeting and decision, and of minutes of zoning board's meeting).

[2] The City has submitted the relevant meeting minutes of the Board.

to March 14, 2024." ECF No. 1, Prayer for Relief ¶ c.

## II. Legal Standard

To avoid dismissal under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I accept as true all of the complaint's factual allegations when evaluating a motion to dismiss, id., and must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

## III. Discussion

In count 1, Christopher alleges that by virtue of the April 10, 2023 contract offered to her by the Mayor, she has an agreement with the City of Derby and that the City violated the Contract Clause in Article I, § 10 of the U.S. Constitution when it "diminish[ed] the benefits to which the defendant had been contractually bound [under the April 10, 2023 agreement] to provide the plaintiff." ECF No. 1 ¶ 57. In other words, she claims that the Board's March 14, 2024 decision to set the salary for the City's Human Resources Director at $70,000 impaired her contractual rights under the April 10, 2023 agreement, which stated that her salary was $89,180.

"The Contracts Clause restricts the power of States to disrupt contractual arrangements." *Sveen v. Melin*, 584 U.S. 811, 818 (2018). It provides that "[n]o state shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const., Art. I, § 10, cl. 1. To assert a claim under

the Contracts Clause, a plaintiff must allege that there was a contractual relationship, that such relationship was impaired by a law or legislation, and that such impairment was substantial. *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992). "Where there is no contractual relationship, however, there can be no impairment." *Castellano v. City of New York*, 142 F.3d 58, 73 (2d Cir. 1998).

The City of Derby argues that Christopher fails to state a claim because the April 10, 2023 contract which she alleges was impaired is not an enforceable contract and did not bind the City. ECF No. 18-1 at 4. This is so, it argues, because under the City's charter, the Mayor does not have authority to enter into employment contracts on behalf of the City without the approval of the Board and accordingly her claim is foreclosed by *Fennell v. City of Hartford*, 238 Conn. 809, 813 (1996).

In *Fennell*, a group of retired police officers sued the City of Hartford and its pension commission alleging that a statement in a pension manual prepared by the pension commission created an implied contract between the municipality and those officers to pay them certain retirement and pension benefits. In rejecting that claim, the Connecticut Supreme Court stated that

> a city's charter is the fountainhead of municipal powers .... The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised.... Agents of a city ... have no source of authority beyond the charter.... The officer, body or board duly authorized must act [on] behalf of the municipality, otherwise a valid contract cannot be created. Generally the power to make contracts on behalf of the municipality rests in the council or governing body .... Generally, no officer or board, other than the common council, has power to bind the municipal corporation by contract, unless duly empowered by statute, the charter, or authority conferred by the common council, where the latter may so delegate its powers .... It follows that agents of a city ... have no source of authority beyond the charter. [T]heir powers are measured and limited by the express language in which authority is given or by the implication necessary to enable them to perform some duty cast upon them by express language....[A]ll who contract with a municipal corporation are charged with notice of the extent of ... the powers of municipal officers and agents with whom they contract, and hence it follows that if the ... agent had in fact no power to bind the municipality, there is no liability on the express contract....

4

> Thus, every person who deals with [a municipal corporation] is bound to know the extent of its authority and the limitations of its powers.

*Fennell*, 238 Conn. at 813-814 (internal quotation marks and citations omitted). The Court went on to find that according to the City of Hartford's charter, the power to amend the city's municipal employees' retirement fund rested solely with the city council. *Id.* at 817. As a result, the pension commission was without authority to confer additional benefits through the pension manual. *Id.* at 818. *See id*. at 816 ("We conclude, as a matter of law, that the pension manual created and distributed by the commission could not confer any additional benefits not provided for by the city's charter.")

Here, the City of Derby points to its charter which prescribes the manner in which the municipality may enter into contracts.[3] In pertinent part, the charter provides that the Mayor has the "power ... to sign, as approved by the Board of Aldermen/Alderwomen, contracts ...." Sec. 9, ECF No. 18-3 at 5. The Board "shall be the superior body in the City and when assembled according to law[,] is authorized by a majority vote of the members of said Board ... to create, regroup, consolidate or abolish, boards or commission, departments and offices and to define the power, duties and responsibilities thereof...." Sec. 25, ECF No. 18-3 at 13. The charter provides that "[t]he salary and compensation of all ... city officials and employees shall be fixed by the Board of Aldermen/Alderwomen." Sec. 59, ECF No. 18-3 at 33. The defendant argues that based on these provisions, the Mayor did not have the authority to enter into the April 2023 contract and that as a result it is unenforceable. *See Fennell,* 238 Conn. at 814 ("if the ... agent had in fact no power to bind the municipality, there is no liability on the express contract") (internal quotation marks and citation omitted).

---

[3] I may take judicial notice of the City's charter, which the defendant submitted with its motion. ECF No. 18-3 at 2-45. *Fair v. Esserman*, 2015 WL 7451154, at *4 (D. Conn. Nov. 23, 2015) ("no question" that the court may take judicial notice of a municipal charter)(citing cases).

In light of the language of the charter, I agree that the Mayor lacked authority to enter into the agreement at issue and that as a result, under *Fennell*, the agreement is unenforceable. Christopher's arguments in opposition to the motion do not alter my conclusion.

Christopher first argues that "the fault for the [sic] not obtaining the Board of Aldermen/Alderwomen's approval does not fall on the plaintiff." ECF No. 23 at 6. She asserts that "[s]ince it was the defendant's violation of its charter in allegedly failing to follow the proper contracting process, and not the result of any misconduct on the part of the plaintiff, the plaintiff should be accorded the rights provided to her under the April 10, 2023 employment agreement," and cites, without discussion, *Chotkowski v. Connecticut Pers. Appeal Bd.*, 176 Conn. 1 (1978). *Id.*

Christopher's reliance on *Chotkowski* is unavailing. *Chotkowski* concerned an erroneous classification of the plaintiff's position under state statutes. The defendant personnel appeal board determined that the plaintiff was not a "permanent employee" and therefore, under a Connecticut statute, had no right to appeal his dismissal. The plaintiff challenged that determination. On appeal, the Connecticut Supreme Court examined the statute defining the term "permanent employee" and concluded that the plaintiff met the requirements of the statute, and therefore he was a permanent employee at the time of his dismissal. *Id.* at 3.

It's unclear how *Chotkowski* supports the plaintiff's argument especially in light of well settled Connecticut law that those "who contract with a municipal corporation are charged with notice of the extent of ... the powers of municipal officers and agents with whom they contract." *Fennell*, 238 Conn. at 813-814.

Christopher next argues that "[t]he facts of the present case fall within the parameters outlined in *Vertex, Inc. v. Waterbury*, 278 Conn. 557 (2006)." ECF No. 23 at 7. In *Vertex*, the

6

Connecticut Supreme Court held that a private party can recover against a municipality under an unjust enrichment theory. Specifically, the Court stated "that a municipal corporation may become liable on an implied contract within the scope of its corporate powers, where the contract is deduced by inference from corporate acts or is a contract implied in law.... The only limitation to recovery under this theory that is peculiar to a municipality is that this implied in law contract must be within the municipality's corporate powers; it must appear that there is statutory authority in the city to contract for the particular services." *Id.* at 576-77.

*Vertex* is distinguishable from this case. Christopher's Contract Clause claim rests, as it must, on the existence of a contract, not unjust enrichment, an "equitable" remedy that

> applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract.... With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard.... Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy.... Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment.

*Vertex, Inc.*, 278 Conn. at 573; *see also id.* at 574 ("[A]n implied in law contract is not a contract" but is, instead, "another name for a claim of unjust enrichment.") Christopher cites no authority suggesting that a Contract Clause claim may be grounded on a claim for unjust enrichment. In any event, such a claim still would be precluded under *Fennell* because the Mayor did not have authority to bind the City of Derby. *See Biello v. Watertown*, 109 Conn. App. 572, 584 (2008) (holding that *Fennell* was dispositive of the plaintiff's claims against the Town of Watertown for breach of implied contract, unjust enrichment and quantum meruit "because the water and sewer authority lacked the authority to set the plaintiff's salary and because the town council did not approve the suggested salary").

7

Christopher next argues that *Fennell* does not preclude her claim because the "mayor had the requisite approvals of the Board of Aldermen/Alderwomen." ECF No. 23 at 11. She points to the December 19, 2022 Board resolution to compensate the Human Resource Director at $49 per hour for eight hours per week. ECF No. 1 ¶ 16. She asserts that "[t]he language of the resolution does not explicitly limit the plaintiff's work week to eight (8) hours. With the Board's approval of the job description for the position of Director of Human Resources,[4] and the compensation fixed at $49 per hour, the mayor had the requisite approvals of the Board to agree with the plaintiff to pay her no more than $49 per hour. Compliance with Charter § 59 was satisfied when the Board of Aldermen/Alderwomen approved the job description and fixed the compensation at $89,180.00, which equates to $49.00 per hour for a 35-hour work week." ECF No. 23 at 11.

Christopher's attempt to weave the Board's actions into approval of the Mayor's 2023 agreement fails. In December 2022, the Board approved the "Human Resources Director's compensation at $49/hr for eight hours per week." ECF No. 1 ¶ 16; ECF No. 24-1 at 52. This statement is unambiguous. Contrary to the plaintiff's argument, the Board did not approve or set compensation for more than eight hours in this resolution. Indeed, the Board did not approve any increase in compensation until March 14, 2024, when it set the full-time annual salary of the Human Resources Director at $70,000. ECF No. 18-2 at 10.[5]

In sum, the Mayor did not have authority under the City's charter to contract with the plaintiff as to her compensation and therefore the March 2023 agreement is unenforceable.

---

[4] To be clear, Christopher does not argue that the job description contained any discussion of hours.

[5] Christopher's argument about the meaning of the December 2022 resolution is also undercut by various subsequent meeting minutes in which attempts to increase the compensation failed. See ECF No. 24-2 at 16, 1/12/23 minutes (postponing motion to "move the current HR position from part time, 8 hours a week, to a full-time position at $49.00 per hour"); ECF No. 24-3 at 4, 2/9/23 minutes (postponing motion to "approve the compensation package for the Human Resources Director outlined in the offer of employment letter."); ECF No. 24-4 at 14-15, 3/9/23 minutes (again postponing "Human Resources Director Compensation.")

Without an underlying enforceable contract, the plaintiff's Contract Clause claim fails. *See Colon de Mejias v. Malloy*, 353 F. Supp. 3d 162, 171 (D. Conn. 2018) ("The threshold inquiry in a Contract Clause analysis is whether there exists a contractual obligation that has been impaired by state action.") *aff'd sub nom. Colon de Mejias v. Lamont*, 963 F.3d 196 (2d Cir. 2020); *Baron v. Port Auth. of New York & New Jersey*, 105 F. Supp. 2d 271, 279 (S.D.N.Y. 2000) (where "the court has found that plaintiffs do not have enforceable contracts ... the court holds that as a matter of law, plaintiffs' claim under 42 U.S.C. § 1983 for violation of the Contract Clause, Art. I, § 10 of the Constitution fails") *aff'd*, 271 F.3d 81 (2d Cir. 2001).

**Count 2: Due Process claim**

In count 2, Christopher alleges that her "entitlement to the compensation provided to her under the terms of the April 10, 2023 employment agreement constitutes a property interest protected by the Due Process Clause of the Fourteenth Amendment" and that on March 24, 2024, the defendant deprived her of her property right without due process "when it unilaterally reduced her salary" to $70,000 "without providing the plaintiff with pre-deprivation notice" and "an opportunity to be heard." ECF No. 1 ¶¶ 88-89.

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). "Thus, the threshold inquiry is whether the plaintiff has demonstrated the existence of a constitutionally protected property or liberty interest.... Absent such an interest, no process is 'due.'" *A.F.C. Enters. v. New York City Sch. Const. Auth.*, 1999 WL 1417210, at *8 (E.D.N.Y. June 29, 1999). Property interests are not created or defined by the Constitution but "by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*,

9

408 U.S. 564, 577 (1972). "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577.

That is not the case here. Because the contract is unenforceable, Christopher has no "legitimate claim of entitlement to" - and therefore no property interest in - the agreement. Thus, she cannot plead a plausible due process claim. *See Fennell*, 238 Conn. at 820 (holding that plaintiffs' procedural due process claim failed "[b]ecause the plaintiffs do not have a property interest in the claimed benefit"); *Airday v. City of New York*, 406 F. Supp. 3d 313, 320 (S.D.N.Y. 2019) (holding that an unenforceable contract is not a property interest protected by the Fourteenth Amendment's Due Process Clause).

### IV.   Conclusion

For the foregoing reasons, the defendant's motion to dismiss is GRANTED as to counts 1 and 2. Because these claims are the only ones over which the Court has original jurisdiction, I decline to exercise supplemental jurisdiction over plaintiff's remaining state law breach of contract claim, pursuant to 28 U.S.C. § 1367(c)(3), and therefore dismiss count 3 without prejudice. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
September 9, 2025